LOUIS BLANCK, Appellant, *v.* FRANK X. SADLIER, as Receiver of the Property of CASSIDY & ADLER, Respondent.

1. VENDOR AND PURCHASER — SALE SUBJECT TO MORTGAGE — UNDISCLOSED CLAUSE IN MORTGAGE REQUIRING PAYMENT IN GOLD. It is a fundamental condition of the maintenance of an action by the purchaser of real estate at a public sale, expressly subject to an outstanding mortgage, to recover back his deposit of purchase money and his expenses, either in rescission of the contract or as damages, on the ground that a provision in the mortgage requiring its payment in gold was not disclosed by the terms of sale, that the plaintiff establish that there was an undertaking by the vendor, based upon contract or upon a representation

equivalent to a contract, that the mortgage was payable generally and could be discharged by payment in any legal currency.

2. CONTRACT ON BASIS OF PAYMENT OF MORTGAGE IN ANY LAWFUL CURRENCY, AND NOT IN GOLD ONLY, NOT IMPLIED. In view of the legislation and governmental action on the subject, the contingency that the United States will cease to maintain the parity of the currency and refuse to pay its obligations in gold is too remote to raise an assumption or implication that an executory contract for the sale of land, subject to a mortgage, of which the amount, rate of interest and time to run were stated in the terms of sale, without any representation as to the medium of payment, was made upon the basis of the mortgage being payable generally in any lawful currency and not in a particular kind of lawful money, as gold.

3. OBJECTION TO COMPLETING SALE, BASED ON GOLD CLAUSE IN MORTGAGE. It is not a valid ground of objection, on the part of the purchaser, to the completion of an executory contract for the sale of land subject to a specific mortgage, that a special clause in the mortgage making it payable in gold was not disclosed at the time the contract was made, provided there was no deceit or misrepresentation, and it appears that the silence of the contract did not affect the value of the property or influence the purchaser in making his bid and that it will not impose any additional burden on him in case the contract is completed.

*Blanck* v. *Sadlier*, 5 App. Div. 81, affirmed.

(Argued June 24, 1897; decided October 5, 1897.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 13, 1896, which affirmed a judgment in favor of defendant entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*E. J. Spink* for appellant. The provisions of the terms of sale must be construed most strongly against the defendant who prepared them. (Pomeroy on Contracts, §§ 366, 367, 368; *Gibson* v. *D'Este*, 2 Y. & C. 542; *Graves* v. *Wilson*, 4 Jur. [N. S.] 471; *Dykes* v. *Blake*, 4 Bing. [N. C.] 463; *Jones* v. *Edney*, 3 Campb. 285.) The purchaser cannot be compelled to do anything more than, or to take something different from, that which is provided by the clear meaning of the terms of sale. He is not bound to take upon himself

any risk or trouble not contracted for. ( *Webster* v. *K. C. T. Co.,* 145 N. Y. 275; *Schmidt* v. *Reed,* 132 N. Y. 108; *Oppenheimer* v. *Humphreys,* 31 N. Y. S. R. 622; 56 Hun, 649; *Zorn* v. *McParland,* 11 Misc. Rep. 555; *Smyth* v. *Sturges,* 108 N. Y. 495.) By the terms of the contract the property was to be conveyed subject to a "lawful money" mortgage. This is clear under legal principles of interpretation. It is also the practical construction put upon it by the defendant. (*M. Bank* v. *Van Dyck,* 27 N. Y. 400; *Julliard* v. *Greenman,* 110 U. S. 421; *Legal Tender Cases,* 12 Wall. 457; U. S. R. S. §§ 3588, 3589, 3590; *Maryland* v. *R. R. Co.,* 22 Wall. 105; *Snyder* v. *Seaman,* 2 App. Div. 258; *Peabody* v. *Dewey,* 153 Ill. 657.) The mortgage, in fact, on the property is enforceable in gold. (*Bronson* v. *Rodes,* 7 Wall. 229; *Trebilcock* v. *Wilson,* 12 Wall. 687.) The plaintiff is suing for money had and received, to recover back money paid by him on a consideration which has failed. (*Green* v. *Green,* 9 Cow. 50.) The defendant does not ask equitable relief, but assumes the position of exacting a forfeiture. (*Oppenheimer* v. *Humphreys,* 31 N. Y. S. R. 622; 56 Hun, 649; *Zorn* v. *McParland,* 11 Misc. Rep. 555; *Page* v. *McDonnell,* 55 N. Y. 299.)

*Henry Yonge* and *Albert E. Lamb* for respondent. The defendant here is an officer of the court. To set aside a sale made by such an officer it is necessary to establish fraud or grave mistake. Mere technicalities the court will not notice. (*Riggs* v. *Pursell,* 66 N. Y. 198; High on Receivers [3d ed.], § 191; *Hackley* v. *Draper,* 60 N. Y. 88.) The mortgage on the property was for $16,000, at five per cent, payable in about three years in gold coin. The fact that it was payable in gold coin is not a variance from the description of the mortgage in the terms of sale. (*Trebilcock* v. *Wilson,* 12 Wall. 687.) The complaint does not allege, and there is no evidence of any damage by reason of the mortgage being what is termed a gold mortgage. The absence of proof of this character is fatal to the plaintiff's contention. (*Riggs* v.

*Pursell*, 66 N. Y. 198; 74 N. Y. 375; *Wetmore* v. *Bruce*, 118 N. Y. 323; *Gould* v. *Allen*, 1 Wend. 182; *Thompson* v. *Gould*, 16 Abb. Pr. [N. S.] 424.) Even admitting that it could be positively proved that on the date of maturity of the mortgage in question, gold would be at a premium, the plaintiff would not then be damaged. (*Griffin* v. *Colver*, 16 N. Y. 489; *Cassidy* v. *Le Fevre*, 45 N. Y. 562; *Messmore* v. *N. Y. S. & L. Co.*, 40 N. Y. 422; *Starbird* v. *Barrons*, 38 N. Y. 230; *R. L. Co.* v. *S. & P. P. Co.*, 135 N. Y. 209.) Where prospective loss is claimed there must be evidence that such loss will result. (Sedg. on Dam. [8th ed.] § 172.) There is no proof in this case that the plaintiff made any mistake, or that he did not know that this mortgage was a gold mortgage. He can, therefore, have no relief. (1 Story's Eq. Juris. 166, § 152; *Lyman* v. *U. S. Ins. Co.*, 2 Johns. Ch. 630; *Gillespie* v. *Moon*, 2 Johns. Ch. 585; *Southard* v. *Curley*, 134 N. Y. 148; *Devereux* v. *S. F. Office*, 51 Hun, 151.) The court should apply the maxim " *de minimis non curat lex*." (*Corwithe* v. *Griffing*, 21 Barb. 9; *Searles* v. *Cronk*, 38 How. Pr. 320; *Crook* v. *Rindskopf*, 105 N. Y. 476.) The principles of equity are available by the defendant, although the action is at law. (*Sheehan* v. *Hamilton*, 2 Keyes, 306; *Brown* v. *Miles*, 61 Hun, 453; *Phillips* v. *Gorham*, 17 N. Y. 270; *Dobson* v. *Pearce*, 12 N. Y. 156; *Crary* v. *Goodman*, 12 N. Y. 266; *N. Y. C. Ins. Co.* v. *N. P. Ins. Co.*, 14 N. Y. 85; *Cummings* v. *Morris*, 25 N. Y. 625; *McHenry* v. *Hazard*, 45 N. Y. 580; *Savage* v. *Allen*, 54 N. Y. 458; *Cavalli* v. *Allen*, 57 N. Y. 508; *Hoppough* v. *Struble*, 60 N. Y. 430.) The plaintiff had constructive notice of the terms of the mortgage and may not now plead ignorance of its provisions. (*Riggs* v. *Pursell*, 66 N. Y. 198; *Gibert* v. *Peteler*, 38 N. Y. 165; *Williamson* v. *Brown*, 15 N. Y. 364; *Cowen* v. *Paddock*, 43 N. Y. S. R. 342.)

ANDREWS, Ch. J.   The plaintiff on June 6th, 1895, became the purchaser at public auction of premises known as No. 138 West 133d street, in the city of New York, for the sum of

$19,700. The sale was made by the receiver of the firm of Cassidy & Adler under the order of the court. There was at the time of the sale a mortgage on the premises for $16,000, dated January 3d, 1894, and payable January 30th, 1899, "in gold coin of the United States of America of the present standard of weight and fineness." The sale was made as stated in the conditions of sale, "subject to a mortgage of $16,000, to be at 5 per cent, three years to run," and there was no further or other statement or representation made at the time as to the terms or character of the mortgage. The conditions of sale further provided that all liens and incumbrances upon the premises would be allowed out of the purchase money. The plaintiff at the time of the purchase paid ten per cent of the purchase price and the auctioneer's and salesroom fees, as required by the terms of sale. Subsequently upon the examination of the title by his counsel, the provision in the mortgage requiring payment to be made in gold coin was discovered. The plaintiff at the time appointed for the closing of the title, stated the fact so ascertained, and refused to accept the conveyance tendered by the defendant, unless he would procure a change in the mortgage by the elimination therefrom of the provision requiring its payment in gold. The defendant refused to comply with such requirement and stood upon the validity of the title tendered and the insufficiency of the objection made to the mortgage. Thereupon the plaintiff, having first obtained the consent of the court, brought this action against the receiver to recover back the ten per cent of the purchase money and the auctioneer's and. salesroom fees paid on the sale, and also the expenses incurred in the examination of title. It seems that neither the plaintiff nor the receiver at the time of the sale knew that the mortgage contained the provision in question. There was no proof that the provision for the payment of the mortgage in gold affected the salable value of the premises.

The sole question presented by this record is whether the plaintiff, by reason of the presence in the mortgage of this provision, was justified in refusing to accept the title, and

became entitled to maintain this action. The general rule is well settled that a vendor under an executory contract for the sale of land, unless exempted by the terms or nature of the contract, is bound to convey a good title, free from any essential defect, and the purchaser cannot be compelled to accept a conveyance of property differing from the contract in any material particular. The obligation of the vendor to convey a good title exists independently of any express undertaking in the contract. Where not expressed, it is implied from the nature of the transaction. And although the title tendered may in fact be good, yet if it is subject to reasonable doubt, depending upon the ascertainment of some material fact extrinsic to the record title, to be found by a jury when the question arises, the purchaser in general will not be required to complete the purchase, for he is entitled to a title not only good in fact, but marketable. (*Burwell* v. *Jackson*, 9 N. Y. 535; *Fleming* v. *Burnham*, 100 id. 1; *Moore* v. *Williams*, 115 id. 586; Leake on Con. 831.) Where the vendor refuses to perform his contract, or is unable to do so by reason of some defect in the title affecting the substance of the thing contracted for, or where the contract was induced by fraud or misrepresentation, the vendee may treat the contract as rescinded and recover back any deposit made on account of the purchase money and the necessary expenses to which he has been put preliminarily to the completion of the contract on his part. (*Lawrence* v. *Taylor*, 5 Hill, 114; *Graves* v. *White*, 87 N. Y. 463; Leake on Con. 107, 1070.)

The action brought by the vendee in the present case proceeds on the theory that, by the contract of sale, the mortgage subject to which he purchased was to be a mortgage payable in any lawful currency, and that the provision therein which required its payment in gold coin was not the incumbrance described in the conditions of sale, and that he was not bound to accept the conveyance tendered by the defendant, unless he procured the mortgage to be reformed in this respect. Whether this action is regarded as an action based on a rescission of the contract by the plaintiff for the default of the

defendant in performing the contract, or as an action for damages for its breach, it is plain that in either aspect it is a fundamental condition to its maintenance that the plaintiff should establish that there was an undertaking by the defendant, based upon contract or upon a representation equivalent to a contract, that the mortgage subject to which the plaintiff purchased was payable generally and could be discharged by payment in any legal currency.   We think there was no such contract or representation.   It is not claimed that there was any representation as to the terms of the mortgage, outside of the conditions of sale.   The amount of the mortgage was stated, the rate of interest and the time it was to run.   It made no reference to the medium of payment.   Obviously, therefore, if there was any contract that it was payable generally in any lawful money, and not in gold coin only, it was an implied as distinguished from an express contract.   If such implication existed in this case it was an unexpressed term which the law reads into the contract to effectuate the actual though unexpressed agreement of the parties.   Implied contracts are familiar to the law.   The court, as has been said, will imply such a contract whenever there is something not expressed, which it is clear to all men of ordinary intelligence and knowledge of business must either have been latent in, or palpably present to, the minds of both parties when the contract was made.   (BRETT, J., *Thorn* v. *City of London*, L. R. [10 Ex.] 123.)   The case of the implication of a contract to give a good title in contracts for the sale of land is an illustration of the application of this principle.   So, on principles of natural justice or to overreach covin or fraud, courts often force upon a wrongdoer the implication of a contract, although none existed in fact.

In this case the land was the subject of sale, and not the mortgage.   The purchaser was notified of the existence of the mortgage and its amount.   He made no inquiry as to whether it contained any special terms.   He purchased subject to this incumbrance, entering into no personal obligation for its payment.   The provision in this mortgage that it should be

paid in gold coin, although not present in most mortgages, was not unusual or infrequent. Such a provision is found in many corporate mortgages and in mortgages taken by savings and other institutions. It was an important provision at a time when treasury notes or legal tenders were not convertible into coin. (Law of United States, February 25, 1862; *Bronson* v. *Rodes*, 7 Wall. 229.) Now, under the laws of the United States, the paper currency of the government and silver coins are exchangeable at the treasury for gold coin at their nominal amount, and, as shown in the opinion of Judge Ingraham, the faith of the government of the United States is pledged by solemn and repeated declarations by Congress and the various departments of government to maintain the parity of all the currency issued by the government. The only hazard which the plaintiff would assume in taking the premises subject to the mortgage in question, beyond what would exist if the mortgage was payable without specification of the medium of payment, is the contingency that the United States government would violate its plighted faith, and within the three years which the mortgage has to run, refuse to redeem its obligations in gold. We think this possibility is quite too remote to justify the assumption that the contract was made in reference to the mortgage being payable generally in lawful currency and not in a particular kind of lawful money. Special clauses in mortgages are not infrequent. They sometimes contain what is known as the insurance clause, or a clause making the whole mortgage due after a specified default, and other special terms are sometimes inserted. It would not, we conceive, be a valid ground of objection on the part of a purchaser of land subject to a specific mortgage, wherein the contract did not set out such special clauses, that they were not disclosed at the time the contract was made, if there was no deceit or misrepresentation. The contract here is sought to be avoided, not by reason of any fraud or misrepresentation, nor by reason of any variation in the subject of the sale from the description in the contract, but by reason of an incident connected with an incumbrance on the prop-

erty, as to which the contract was silent, which, so far as appears, did not affect the value of the property or influence the purchaser in making his bid, and which we cannot assume, in view of the fact that the government is pledged to maintain the parity and the equal exchangeable value of treasury notes and silver and gold coin, will impose upon the plaintiff, in case the contract is completed, any additional burden. The law will not imply a contract under such circumstances, that the mortgage was payable generally in any lawful currency, since whether it was or not cannot be supposed to have been a material circumstance entering into the substance of the transaction or an efficient element in inducing the contract.

The judgment should, therefore, be affirmed.

BARTLETT, J. (dissenting). I am for reversal. Presiding Justice VAN BRUNT, in his dissenting memorandum below, said:

"When I contract to pay for property I may pay in any legal tender; when I take subject to an obligation, I may assume that I can discharge it in any kind of legal tender."

In my judgment this quotation contains the law of the case clearly and briefly stated. This was a sale at the Real Estate Exchange in the city of New York under terms of sale which provided, " The property is sold by a good title in fee simple * * * subject to a mortgage of $16,000, to be at five per cent, 3 years to run."

These sales are attended by a large number of bidders, and the purchaser is given ample time to search the title after the property is sold. In this case, by the terms, the sale was made June 6th, 1895, and the deed was to be delivered and balance of purchase money paid July 2nd, 1895.

The bidders rely upon the terms of sale, and no search of the title is ever made until the property is purchased.

If it was the intention to sell this property subject to a mortgage not payable in legal tender it should have been so stated in the terms of sale.

Any other rule will compel bidders to search titles for the

terms of incumbrances before they can safely bid at the exchange.

The mere statement of this proposition, which will compel hundreds of bidders at the exchange to examine titles they may never purchase, shows how unwise and inconvenient is the rule that is sought to be established in this case.

In the legal tender case of *Juilliard* v. *Greenman* (110 U. S. 421) the Supreme Court of the United States laid down the rule (page 449) that a contract to pay a certain sum in money, without any stipulation as to the kind of money in which it shall be paid, may always be satisfied by payment of that sum in any currency which is lawful money, at the place and time at which payment is to be made.

The plaintiff, in the case at bar, on consulting the terms of sale, found that the property was " subject to a mortgage of $16,000, to be at five per cent, 3 years to run." He had the right to assume, in the absence of a statement to the contrary, that the mortgage was payable in whatever should be legal tender at the time of payment, whether it might be gold, silver, greenbacks or treasury notes.

If this general right was curtailed by the stipulations of the contract, the terms of sale should have so stated, in order to have put bidders upon their guard.

This plaintiff is not seeking to recover damages; he rests upon the presumption that all contracts are payable in legal tender unless the contrary is made to appear, and, as the terms of sale were silent as to this important point, he disaffirms the contract of sale, and asks to have restored to him what he paid at the time of the sale.

I think he is entitled to recover.

O'BRIEN, MARTIN and VANN, JJ., concur with ANDREWS, Ch. J., for affirmance; HAIGHT, J., concurs with BARTLETT, J., for reversal; GRAY, J., absent.

Judgment affirmed.