FELTENSTEIN v. ERNST et al.

(Supreme Court, Appellate Term.   January 17, 1906.)

1. VENDOR AND PURCHASER—CONTRACTS—INCUMBRANCES—CONDITIONS—IM-
PLIED KNOWLEDGE.

A purchaser of land subject to an incumbrance, having notice of the
existence of the incumbrance and its general nature, is chargeable with
knowledge of the contents, terms, and conditions thereof, and cannot
avoid his purchase, no deceit having been exercised, because he did
not acquaint himself with the particular terms of the incumbrance.

2. SAME—MORTGAGES.

A contract for the sale of land provided that it should be conveyed sub-
ject to a first mortgage, bearing interest at the rate of 5 per cent. and
due at a certain date.  The mortgage which was recorded contained, in
addition to the usual clauses, a stipulation that, if any law should be
enacted reducing the taxable value of land or changing the laws in re-
lation to taxes on mortgage debts, the mortgagors should pay to the
mortgagee a sum equal to the tax so imposed in addition to the interest,
unless the amount of such tax added to the interest should exceed legal
interest, in which event, or if payment of such tax by the mortgagor
should be prohibited by law, the mortgage was to become due 30 days
after the enactment of the law.  *Held*, that the vendee was chargeable
with notice of the conditions of the mortgage, and, though there was a
possibility that without any acts or default on the part of the vendee
the interest on the mortgage might be increased beyond 5 per cent. or
the due date advanced, the vendee was not released from his contract.

Blanchard, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by Sidonia Feltenstein against Moritz L. Ernst and another.
From a judgment for plaintiff, defendants appeal.   Reversed.

Argued before SCOTT, P. J., and BLANCHARD and DOW-
LING, JJ.

Arnstein & Levy (Emil Goldmark, Emanuel Arnstein, and Samuel
Levy, of counsel), for appellants.

Feltenstein & Rosenstein (Moses Feltenstein, of counsel), for re-
spondent.

SCOTT, P. J.   This is an action to recover the deposit paid by
plaintiff's assignor upon a contract for the purchase from defendants
of certain real property in the city of New York.   The contract was
dated May 15, 1905, and provided that the property should be con-
veyed "subject to a first mortgage in the sum of twenty-six thousand
five hundred dollars ($26,500), bearing interest at the rate of five (5%)
per cent. per annum.   Due Dec. 1st, 1907."   The mortgage, as appears
from the evidence, was an existing mortgage at the time the contract
was made, having been executed on August 19, 1904, and recorded in
the register's office on the same day.   By its terms it was to become
due on December 1, 1907, and bore interest at the rate of 5 per cent.
per annum.   It contained the usual interest, tax, assessment, insurance,
and receivership clauses, and in addition thereto a clause, commonly
known as the "Brundage clause," providing for the contingency of
the imposition by the Legislature of a specific tax on mortgages.   This
clause provided in substance that if, before the debt was paid, any law

should be enacted reducing the taxable value of land by deducting therefrom any lien thereon, or changing the laws in relation to taxes on debts secured by mortgages or the manner of collecting such taxes, the mortgagors should pay to the mortgagee a sum equal to the· tax or burden imposed by such law upon the holder of such bond and mortgage in addition to the interest provided to be paid by said bond and mortgage, unless the amount of such tax added to the said interest should exceed legal interest, or unless payment of such tax by the mortgagor or owner of the land should be prohibited by law. If the tax added to the interest should exceed legal interest, or if payment of the tax by the mortgagor or owner of the land is prohibited by law, the bond and mortgage is to become due and payable 30 days after the enactment of the law. The additional amounts to be paid are to be regarded as interest.

If any law be enacted under which by the terms of this covenant the mortgagors may become liable to pay an additional sum, they may at their option pay off the bond and mortgage upon giving three months' notice.

It is not to be denied that there is a possibility under this clause that, without any act or default on the part of the·mortgagor or the owner of the land, the interest on the mortgage may be increased beyond 5 per cent. or the due date may be advanced. The plaintiff contends, and the court below held, that this possibility avoided the contract and entitled the plaintiff to recover back the deposit paid by her assignor. The significant facts are that the mortgage was an existing instrument at the time the contract was made, and that in so far as the contract undertook to describe it the description was accurate, for the mortgage did bear 5 per cent. interest and was to fall due on December 1, 1907. The general rule respecting the purchase of land subject to incumbrances is that, if the purchaser has notice of the existence of the incumbrance and its general nature, he is chargeable with knowledge of the contents, terms, and conditions thereof, and cannot avoid his purchase, no deceit or fraud having been exercised, because he did not acquaint himself with the particular terms of the incumbrance, and finds them to be different from what he supposed. Riggs v. Pursell, 66 N. Y. 193; Kingsland v. Fuller, 157 N. Y. 510, 52 N. E. 562; Blanck v. Sadlier, 153 N. Y. 551, 47 N..E.. 920, 40 L. R. A. 666. The latter case is in some respects similar to the present. The action was also by a purchaser to recover back a deposit paid upon a contract for the sale of real property. The sale was agreed to be made "subject to a mortgage of $16,000 to be at five per cent., having three years to run," and no other or further statement or representation was made as to the time or conditions of the mortgage. It developed upon examination that the mortgage contained a clause requiring it to be paid in gold coin. In deciding against the plaintiff the Court of Appeals used language that is peculiarly applicable to the present case, saying:

"In this case the land was the subject of sale, and not the mortgage. The purchaser·was notified of· the existence of the mortgage and its amount. He made no inquiry as to whether it contained any special terms. He purchased subject to the incumbrance, entering into no personal obligation for its payment. * * * Special clauses in mortgages are not infrequent. * * * It would not, we conceive, be a valid ground of objection on the part of a

purchaser of land subject to a specific mortgage, wherein the contract did not set out such special clauses, that they were not disclosed at the time the contract was made, if there was no deceit or misrepresentation."

So it was said in Riggs v. Pursell, supra:

"This was a sale of premises held under a lease, and the lease was referred to in the notice of sale, and hence the purchasers are chargeable with knowledge of the contents thereof. They are supposed to have examined the lease and made their bid in view of its provisions."

The point in these cases, as in the present, is that the purchaser agreed to take subject to a specific incumbrance of which he had notice. Presumptively he had also knowledge of its terms. If he had not, he should have ascertained the terms either by examination of the record, or by inquiry of the seller. All that the seller is required to do is to correctly describe the incumbrance so far as he attempts to describe it at all. If he does this and tenders a deed subject to a mortgage answering the description in the contract, he has fulfilled his obligation. The contract of sale made no reference to any covenants in the mortgage, not even specifying that it contained, as it did, "the usual covenants," so that no basis is provided for the application in plaintiff's behalf of the maxim: "Expressio unius est exclusio alterius." Undoubtedly the purchaser was entitled to rely upon the description of the mortgage in so far as the seller undertook to incorporate it in the contract, and if the amount has been found to be larger, or the interest higher, or the due day earlier, a very different question would have been presented. But the description was not inaccurate. The reference to the mortgage in the contract was manifestly to that instrument as it then existed, and the amount, rate of interest, and due date were correctly set forth. Schiff v. Tamor, 104 App. Div. 42, 93 N. Y. Supp. 853, much relied upon by the plaintiff, is not in point. There too the purchaser had agreed to take title subject to an existing mortgage, and the seller had stipulated on his part that the principal sum thereof was "to be extended, prior to the closing of title hereunder, for not less than three years, at the same rate of interest, by an extension in writing executed by the holder and duly acknowledged." The seller tendered, in fulfillment of this agreement, an extension which included the so-called Brundage clause heretofore cited, which was not incorporated into the existing mortgage. The court held, very naturally, that the purchaser had agreed to buy subject to the mortgage as it existed when the contract was made, that the seller's agreement was for an unconditional extension of that mortgage just as it then existed, and that that obligation was not satisfied by tendering an extension tacking onto the mortgage any other or different conditions than those which it contained at the time of making the contract. In my opinion the plaintiff's obligations to the fulfillment of the contract are untenable, and the judgment should be reversed, with costs to appellants to abide the event.

Judgment reversed, and new trial granted, with costs to appellants to abide the event.

DOWLING, J., concurs.

·BLANCHARD, J. (dissenting). The defendants appeal from a judgment in favor of the plaintiff, in an action brought to recover $2,-000 paid upon the execution of a contract between the plaintiff's assignor and the defendants, whereby the defendants agreed to sell to the plaintiff's assignors certain real property "subject to a first mortgage in the sum of twenty-six thousand five hundred ($26,500) dollars, bearing interest at the rate of five (5%) per cent. per annum, due December 1st, 1907." The plaintiff's assignors refused to accept title upon the ground that the mortgage contained the following clause:

"It is hereby further agreed by the parties hereto that if at any time or times before said bond is paid any law or laws be enacted, reducing the taxable value of land by deducting therefrom any lien thereon or changing the laws in relation to taxes on .debts secured by mortgages or the manner of collecting such taxes, the mortgagors· agree to pay to the mortgagee a sum equal to the tax or burden imposed by said law or laws on the holder of the said bond and this mortgage, in addition to the interest provided to be paid in said bond, within ten days after said tax is made payable by said law or laws, unless the amount of said tax added to the amount of interest provided for in said bond exceed legal interest, or unless the payment of said tax by the mortgagors or owner of the land is prohibited by law. If the amount of said tax and the interest aforesaid exceed legal interest, or if such payment by the mortgagors or owners of the land is prohibited by law, then said bond and this mortgage shall become due and payable at the expiration of thirty days after the enactment of any such law or laws. The additional amounts which may, under the foregoing provisions, become due and payable shall be regarded as interest and shall be part of the debt secured by said bond and this mortgage, and all the provisions in reference to default in payment of interest contained shall apply to such additional amounts. If a law be enacted under which the mortgagors shall be liable to pay an additional sum under the foregoing provisions, the mortgagors may pay off said bond at any time before maturity, if said mortgagors give to the holder thereof three months' prior notice in writing of the intention to do so. It said notice be given, said bond and this mortgage shall then become due and payable, as if the time fixed in the notice had been named in the bond as the time for the payment of said principal sum."

The description of the mortgage contained in the contract, in so far as it stated unconditionally that the rate of interest was 5 per cent. and that it became due December 1, 1907, was incorrect. In Schiff v. Tamor, 104 App. Div. 42, 93 N. Y. Supp. 853, action was brought to compel the specific performance of a contract for the purchase of real estate. By the terms of the contract the defendants were to assume a mortgage of $18,000, and the plaintiff stipulated that "the principal sum of" this mortgage should "be extended, prior to the closing of title thereunder, for not less than three years, at the same rate of interest, by an extension in writing executed by the holder thereof and duly acknowledged." The defendants offered to perform, but the plaintiff produced an extension coupled with a provision similar to the one under discussion in the present. The defendants refused to accept the conveyance. In affirming the order dismissing the complaint the learned court said (pages 44, 45 of 104 App. Div., page 855 of 93 N. Y. Supp.):

"While, * * * and this court will hardly take judicial notice of the improbability of the Legislature enacting any revenue measure within the scope of its constitutional powers for the sake of working a forfeiture upon persons who have lawfully contracted and who have shown a willingness to perform.

within the fair intent of their contracts. The contract of the defendants was for an unconditional extension of the mortgage just as it then existed for a period of three years. This was a condition precedent to the right of the plaintiff to performance, and it was not satisfied by an extension which might upon a contingency increase the interest from 4 to 6 per cent. or make the mortgage fall due in a less period than three years."

Upon these grounds it seems that the incorrect description of the mortgage in the present case is sufficient reason for rescinding the contract and recovering the sum paid thereunder.

Blanck v. Sadlier, 153 N. Y. 551, 47 N. E. 920, 40 L. R. A. 666, is not inconsistent with this conclusion. In that case the vendee sought to rescind the contract and recover the part payment on the ground that the terms of sale under which the receiver had sold the realty described the incumbrance as a mortgage for $16,000 at 5 per cent., having three years to run, while in fact the mortgage was payable in "gold coin of the United States of the present standard of weight and fineness." The description in the terms of sale was silent as to this detail. In the present case, however, the language of the contract is a positive misdescription of the important facts of interest and due day. Andrews, C. J., giving the opinion of the court in Blanck v. Sadlier, at page 558 of 153 N. Y., page 922 of 47 N. E. (40 L. R. A. 666) said:

"Now, under the laws of the United States, the paper currency of the government and silver coins are exchangeable at the Treasury for gold coin at their nominal amount, and, as shown in the opinion of Judge Ingraham, the faith of the government of the United States is plighted by solemn and repeated declarations by Congress and the various departments of government to maintain the parity of all the currency issued by the government. The only hazard which the plaintiff would assume in taking the premises subject to the mortgage in question, beyond what would exist if the mortgage was payable without specification of the medium of payment, is the contingency that the United States government would violate its plighted faith, and within the three years which the mortgage has to run refuse to redeem its obligations in gold. We think this possibility is quite too remote to justify the assumption that the contract was made in reference to the mortgage being payable generally in lawful currency, and not in a particular kind of lawful money."

The clause under discussion in the present contract, far from being a provision against a violation of plighted faith by the government, was a provision against a revenue measure which was inhibited by no legislative declarations, and was safely within constitutional powers.

The judgment should be affirmed, with costs.