NETTIE RUCKSTUHL, Appellant, *v.* EDWARD J. HEALY, Respondent.

First Department, December 23, 1927.

**Vendor and purchaser — rescission of contract by purchaser — action is based on alleged false statement as to terms of existing third mortgage — defendant informed plaintiff that she could raise new first mortgage and pay off old first mortgage and second mortgage — clause in third mortgage provided that new first mortgage might be obtained but any excess in principal must be applied to third mortgage — burden on defendant to show that third mortgage could be taken care of as he represented — fact that third mortgage was matter of record is immaterial.**

The plaintiff seeks to rescind a contract for the purchase of real property. The basis of the action is a misrepresentation by the defendant as to the terms of an existing third mortgage. The agreement entered into provided that the plaintiff could procure a new first mortgage and from the proceeds thereof pay off the original first mortgage and the second mortgage, so that the third mortgage would become the second mortgage. This representation by the defendant was untrue, for the third mortgage contained a clause to the effect that a new first mortgage might be obtained for a larger amount and the third mortgage would still remain subordinate, provided any excess in the principal of the new first mortgage was used in payment on the third mortgage. Plaintiff's evidence also showed that she would not have purchased the property if she had known

of the existence of the clause in the third mortgage which prevented the payment of the existing first and second mortgages by means of a new first mortgage. It was error for the court to dismiss the plaintiff's complaint at the close of the case, since she made out a *prima facie* case for rescission.

The plaintiff did not have the burden of showing that the holder of the third mortgage was unwilling to waive the provision in question; she was entitled to stand on the representations made by the defendant.

The fact that the third mortgage was on record does not affect the responsibility of the defendant, for having undertaken to inform the plaintiff as to its contents he was required to state the contents truthfully.

MERRELL, J., and DOWLING, P. J., dissent, with opinion.

APPEAL by the plaintiff from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 1st day of July, 1927.

*Hubert Lewis* of counsel [*Davis, Symmes & Schreiber,* attorneys], for the appellant.

*Victor House* of counsel [*George V. A. McCloskey* with him on the brief; *House, Holthusen & McCloskey,* attorneys], for the respondent.

O'MALLEY, J. The plaintiff vendee sues the defendant vendor to rescind a contract of sale of real property known as Nos. 834–836 Riverside Drive; to recover payment on the contract price of $5,000 and expenses incurred in the examination of title, and to have declared a total sum of $5,299 a lien on the property pursuant to a clause which provided for such lien. The action is predicated upon the theory that the defendant misrepresented the nature of a third mortgage lien upon the premises.

As the complaint was dismissed at the close of the plaintiff's case, her testimony and evidence are entitled to the most favorable inferences deducible therefrom. (*Bahnsen & Co.* v. *Gerst,* 235 N. Y. 426; *Botway* v. *Schnitzer,* 217 App. Div. 468; *Neville* v. *Morrison Coal & Coke Co.,* 211 id. 282; *Wheeler* v. *Lewis,* 203 id. 222.) Moreover, as this is an action in equity to rescind and not one at law for damages, the plaintiff need neither allege nor prove that the alleged misrepresentations were knowingly made or made with fraudulent intent. It is sufficient if the representations were false. (*Bloomquist* v. *Farson,* 222 N. Y. 375.)

Plaintiff, a resident of St. Louis and a school teacher by profession, presented evidence tending to show that she had $30,000 in cash which she desired to invest in real property; that the defendant offered the premises for the sum of $167,500; that of this sum $30,000 was to be paid in cash; another portion thereof to be covered by the aggregate amount of the three mortgages then a lien on the premises, a first mortgage of $60,000, a second mortgage of $33,000,

and a third mortgage of $17,000; and the balance of $27,500 by the execution of a purchase-money mortgage.

At the first of several conferences between the parties the plaintiff informed the defendant that she was willing to take the property at his price, provided satisfactory arrangements respecting mortgages could be made. The defendant told her she could get a new first mortgage of $90,000 with which to pay off the first mortgage of $60,000 and $30,000 on account of the second mortgage, and that the balance of $3,000 on the second mortgage could stand thereon, and that the third mortgage of $17,000 could continue as a third mortgage. Defendant also told her he would take back a fourth mortgage in the sum of $27,500, which was to be a purchase-money mortgage.

Plaintiff testified that she informed the defendant that she did not like to have a fourth mortgage upon the property whereupon the defendant said that in that case she could procure a new first mortgage in the sum of $95,000 which would take care of the first and second mortgages, and that the balance of $2,000 could be applied in reduction of the third mortgage.

On July 28, 1925, she finally came to an arrangement with the defendant, and upon a down payment of $100, received a binder. This set forth the purchase price and the manner of payment as above outlined. It contained also the following provision: " The purchaser will procure a new 1st mortgage of not over $95,000, and will pay off the present 1st & 2nd mortgages. *This will make the present 3rd mortgage of $17,000 a second Mortgage,* and the seller, Edward J. Healy, will take back a third mortgage of $27,500. * * * " (Italics ours.)

The plaintiff did not know at this time of any terms in the $17,000 third mortgage which would prevent it from becoming a second mortgage under the circumstances recited in this binder.

Under date of July 31, 1925, the parties executed a formal contract. It varied in one respect from the binder, by providing that the plaintiff would take the premises subject to a first mortgage which she agreed to procure before the delivery of the deed " in the amount of not more than $110,000. With the proceeds of said mortgage, the Purchaser " agreed to pay off the first and second mortgages and to take the property subject to the third mortgage of $17,000. It further provided that the plaintiff agreed to apply any amount of the new first mortgage so procured in excess of $93,000 in reduction of the said third mortgage. A representative of the title company, present at the time the contract was signed, testified that he understood from the binder and contract that this third mortgage could always be subordinated to a new first mort-

gage, whatever its amount might be. This, of course, was plaintiff's avowed understanding of it.

We now come to the provision of the third mortgage which is the basis of the alleged false representation. This was of record and the defendant himself was the mortgagor therein. It contained a provision that it would remain a subordinate and inferior lien to the old first mortgage then on the premises or to any new mortgage which might be placed thereon in lieu of such old mortgage not exceeding the sum of $60,000, but with the privilege to raise a larger first mortgage to which this mortgage should remain subordinate, provided any excess raised above $60,000 was paid on account of the principal of the third mortgage.

It is apparent, therefore, that the defendant's express oral representation to the plaintiff that the third mortgage would remain subordinate to a new first mortgage in the aggregate amounts of the old first and second mortgages, was untrue. The written documents themselves clearly contain a representation to the same effect, which, of course, was equally untrue. Such representation, according to plaintiff's testimony, was material. She testified she would not have made the purchase had she known of the true situation. The plaintiff, therefore, clearly established a *prima facie* case for rescission, and the defendant was called upon to offer proof in defense.

It was not incumbent upon the plaintiff to prove that the holder of the third mortgage would be unwilling to waive such provisions. She was entitled to stand on the representations made by the defendant. On the contrary, it was incumbent upon the defendant to have the third mortgage taken care of in the manner in which he represented to the plaintiff it was possible to do. (*Greene* v. *Barrett, Nephews & Co.*, 238 N. Y. 207, 212.) Nor does the fact that the third mortgage was of record alter the situation. Having undertaken to speak concerning its nature, the defendant was obligated to speak truthfully, if not fully. The Recording Acts may not be used to effectively perpetrate a fraud or to permit a misrepresentation to be acted upon in this manner without redress. They are primarily for the protection of lienors as against subsequent purchasers and lienors. As was said in *Mead* v. *Bunn* (32 N. Y. 275, 278): "It is claimed, on behalf of the appellant, that the mortgage was duly recorded, and that the plaintiff was, therefore, chargeable with constructive notice, that the statements of the defendant, as to its contents, were false. No such fact is found by the referee; but, if it were otherwise, it is sufficient to say, that it is neither the purpose nor the office of the Recording Acts, to charge the immediate parties with constructive notice of the precise con-

tents of the instruments they execute, but to notify subsequent purchasers and incumbrancers of the rights such instruments are intended to secure. * * * Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual engagement; and he is under no obligation to investigate and verify statements, to the truth of which, the other party to the contract, with full means of knowledge, has deliberately pledged his faith."

We think that defendant's positive assertions, both written and oral, as to the nature of the mortgage executed by himself, justified the plaintiff in relying on the representations without a search of the record title.

We are not concerned with, nor is the record sufficient to permit us to judge of, the merit of the plaintiff's claim. This may be done only after a fair trial of the issues. Suffice it to say that, as already pointed out, she made out a *prima facie* case.

It follows that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN and PROSKAUER, JJ., concur; DOWLING, P. J., and MERRELL, J., dissent.

MERRELL, J. (dissenting). The action was brought in equity for the rescission of a contract for the purchase of real property in the city of New York and for the recovery of a down payment made by the plaintiff to the defendant of $5,000 upon the execution of a contract for the purchase of said real property, and the further sum of $299 claimed to have been expended by plaintiff in the examination of title of said real property. The plaintiff, a school teacher of St. Louis, Mo., sought to invest $30,000 in cash in New York real estate. For some weeks prior to July 28, 1925, negotiations were had between plaintiff's brother and the defendant for the purchase of a parcel of real property located at 834–836 Riverside Drive, borough of Manhattan. Plaintiff testifies that on July 7, 1925, she learned that the defendant had said premises for sale. Plaintiff first met the defendant on July 28, 1925, and negotiated with him with reference to the purchase of said property. At this interview, besides the plaintiff and defendant, there was present plaintiff's brother. The defendant at this interview stated that he would sell his property for $167,500 and stated to plaintiff that there were three mortgages then upon the property, a first mortgage upon which there remained a balance unpaid of $60,000; a second mortgage with an unpaid balance of $33,000, and a third mortgage

with an unpaid balance of $17,000. Plaintiff testified that defendant then told her that in case she purchased, he would require her to procure a new first mortgage on the premises of at least $93,000, and not to exceed $95,000; that with the proceeds of such mortgage she should pay off the first and second mortgages, and that the existing third mortgage for $17,000 would thereby become a second mortgage upon the property. Plaintiff testified that she declined to take title to any real property upon which there were outstanding four mortgages, and that it was to meet such objection that the defendant then made the proposition as to the refinancing of the mortgages upon the property, so that the new mortgage to be given by plaintiff after she received title to the property and the $17,000 mortgage and the purchase-money mortgage would be the only liens upon the property. According to plaintiff's testimony, this last proposition of the defendant was satisfactory to her, and on July 28, 1925, a binder agreement was entered into between the parties, in the following form:

"NEW YORK, *July* 28/25.

" Received from A. P. Ruckstuhl the sum of One Hundred Dollars as a binder for the purchase of property known as 834–836 Riverside Drive, Borough of Manhattan, City of New York, upon the following conditions.

| | | | |
|---|---|---|---|
| Price $167,500 | .......... | | Cash $30,000 |
| 1st Mortgage $60,000 | .......... | 5½% Standing | |
| 2nd      "        33,000 | .......... | 6%—1929—payable $2,000 semi-annually | |
| 3rd      "        17,000 | .......... | 6%—1928—payable $375 quarterly | |

" The purchaser will procure a new 1st mortgage of not over $95,000, and will pay off the present 1st and 2nd mortgages. This will make the present 3rd mortgage of $17,000 a Second Mortgage, and the seller, Edward J. Healy, will take back a third mortgage of $27,500 for 6 years at 6% payable $1,000 semi-annually for the first three years, and $2,000 semi-annually for the 4th, 5th and 6th years.

"EDWARD J. HEALY."

On the same date a duplicate of said binder agreement was executed by plaintiff. Three days later, on July 31, 1925, the parties met and a formal written contract was entered into. The plaintiff was there in person and was represented by one George Cohen, an employee of the Title Guarantee and Trust Company, and the defendant being present in person was also represented by Mr. Victor House, his attorney. The formal contract entered

into between the parties appears in the record by photostatic copy. From this exhibit it appears that there were a number of interlineations made in the contract initialed by the representatives of the respective parties. This contract provides that the purchaser is to take title to the property subject to three mortgages specifically described in the contract, upon the first there remaining unpaid $60,000; upon the second there remaining unpaid a balance of $33,000, and upon the third there remaining unpaid a balance of $17,000. The third mortgage, subject to which the purchase of the property was made, was described in the contract as follows: "Subject also to a mortgage dated June 1, 1923, and recorded in the Register's office of the County of New York in Liber 3342 of Section 8 of Mortgages at page 121, now a lien against said premises, upon which a balance of $17,000 remains unpaid, and which contains a provision that the same shall be amortized at the rate of $375 each three months, with interest at the rate of six (6) per cent per annum payable on each instalment."

The contract then provides that the purchase price is $167,500, $5,000 to be paid upon the signing of the contract, and $25,000 to be paid in cash or by certified check, and a purchase-money bond and mortgage in the sum of $27,500 to be given by the purchaser to the defendant with provisions as to its payment, interest, etc. It was expressly provided in the contract that "the balance of the purchase price, to wit, the sum of $93,000, by assuming the above-mentioned mortgages upon the said premises and taking the same subject thereto, except that the first and second mortgages now a lien upon said premises shall be replaced by a mortgage for not more than $110,000 to be procured by the purchaser as hereinbefore mentioned." Upon the execution of the aforesaid binder agreement the sum of $100 was paid down by plaintiff and upon the execution of the formal contract which was in duplicate, on July 31, 1925, the sum of $4,900 was paid to the defendant by plaintiff.

The ground upon which the plaintiff asks rescission of the contract is that at the time of the execution of the binder agreement and at the time of the execution of the formal contract, the defendant told the plaintiff that by the giving of a new mortgage for $95,000 she could replace the first and second mortgages and. that the third mortgage would thereby become a second mortgage upon the property, and that the defendant concealed from plaintiff the fact that the third mortgage contained a clause to the effect that if a new first mortgage was given for more than $60,000, the sum in excess of said $60,000 should be paid to the holder of the third mortgage. The third mortgage in question was executed on June

1, 1923, by the defendant herein to 834 Riverside Corporation to secure the sum of $20,000 and interest. Upon this mortgage there was at the time of the execution of the contract in suit a balance of $17,000 unpaid. This third mortgage contained the following provision: " This mortgage shall be and remain during its continuance a subordinate and inferior lien to the present first mortgage now on said premises, or to any new mortgage which may be placed thereon in lieu or substitution of the present first mortgage not exceeding however the sum of $60,000 and interest with the privilege however to raise a larger first mortgage to which this mortgage shall be and remain subject and subordinate provided any excess raised above $60,000 is paid on account of the principal of this mortgage in addition to the installments hereby provided to be paid;   *   *   *."

It is the contention of plaintiff that this clause in the mortgage rendered it impossible for her to refinance the proposition, except by raising an extra $17,000 to pay off the third mortgage. This third mortgage was duly recorded in the office of the register of the county of New York on the 2d day of June, 1923, in liber 3342 of Conveyances, at page 121. The only ground upon which a rescission of the contract is asked is the alleged concealment by defendant of said above-quoted provision of the third mortgage. It is the plaintiff's claim that the defendant falsely represented to her that by the giving of a new mortgage to take the place of the first and second mortgages upon the property the third mortgage would thereby become a second mortgage subordinate only to the new mortgage given to take up the two mortgages above mentioned. It is stated in the brief of counsel for the defendant that at the close of plaintiff's case the justice presiding at the trial pressed plaintiff's counsel to state what specific testimony he relied upon to establish false representation, and that plaintiff's counsel in reply contended that the defendant's silence in respect to the subordination provision in the third mortgage, even though defendant might not have been interrogated in that regard and was actually innocent of any intent to mislead, was valid ground for rescission if the plaintiff was in fact under a misapprehension in respect to such subordination provision. So far as I can find, and in fact the plaintiff admitted, she made no inquiry of the defendant concerning the terms of the recorded third mortgage. In dismissing the plaintiff's complaint the court stated: " No claim is made, however, of any fraud on his [defendant's] part, or any affirmative misrepresentation or willful concealment, and plaintiff concedes that during all the times in question the mortgage was duly on record."

There can be no question as to the plaintiff being advised of the existence of the three mortgages upon the property. All of these mortgages were recorded in the office of the register of the county of New York. Plaintiff in her contract expressly assumed and agreed to pay as a part payment of the purchase price of the premises the said three mortgages, with the proviso, "except that the first and second mortgages * * * shall be replaced by a mortgage for not more than $110,000 to be procured by the purchaser," and the plaintiff further agreed "to apply any amount of the first mortgage so agreed to be procured * * * upon which a balance of $17,000 remains unpaid as aforesaid." Upon the trial the only witness sworn by the plaintiff besides herself was Cohen, her representative from the Title Guarantee office. Both plaintiff and her representative testified that they were unaware of the provision in the third mortgage that the excess over $60,000 of any new first mortgage procured should be applied on account of the principal of the third mortgage, and both admitted that they made no inquiry of the defendant or defendant's counsel with regard to the terms of said third mortgage or that required the defendant or his counsel to disclose the terms of the third mortgage. Neither plaintiff nor her representative, Cohen, made any claim that they were ignorant as to the terms of the third mortgage, which was a matter of public record and concerning which information was unquestionably in possession of the Title Guarantee Company, of which Cohen was an employee. Furthermore, it was optional on the part of the holder of the third mortgage to waive his right to payment of the excess over the $60,000 upon his mortgage. Plaintiff testified that she had made no application to the holder of the third mortgage to waive such right, and it is quite probable that the owner of the third mortgage would have been willing to have continued its six per cent loan upon this property which was apparently increasing in value all the time. The contract as finally entered into and which provided that the plaintiff might obtain a new mortgage for $110,000, so provided for the purpose of enabling the plaintiff to pay the three prior mortgages upon the property upon the execution of a new mortgage for $110,000, making the purchase-money mortgage a second mortgage thereto. This the plaintiff could easily have done and relieved herself of all embarrassment. It is quite apparent that for some reason the plaintiff had a case of "cold feet," and wished to withdraw from the contract into which she had entered.

I think the evidence is clearly insufficient to show any misrepresentation of any fact by the defendant which induced plaintiff to enter into the contract of purchase. Plaintiff was asked whether

the defendant when he made his initial proposition as to the four mortgages told her anything else concerning the third mortgage of $17,000 than that it could be amortized quarterly and that by the consent of the mortgagee it could be paid off in full if she desired, and to this inquiry the plaintiff answered, " No, nothing more." The record shows that the $17,000 mortgage could be amortized quarterly and that by the consent of the mortgagee it could be paid off in full if he so desired. This was in fact the only representation made by defendant to plaintiff. There was no concealment by the defendant of the terms of the third mortgage. The defendant knew that the plaintiff had been informed as to the existence of the three mortgages and he knew that all three were matter of record. The defendant could not have known that neither plaintiff nor her title company representative, Cohen, had omitted to take steps to inform themselves of the terms of the third mortgage. In the preliminary negotiations the plaintiff was represented by her brother and upon the execution of the contract by Cohen, the employee of the title company. It does not seem to me that the defendant was charged with any duty to disclose uncalled for details as to the terms of this publicly recorded instrument. The parties both dealt at arms length, each being represented by counsel. No relation of trust or confidence existed between the defendant and the plaintiff. In the case of *Blanck v. Sadlier* (153 N. Y. 551) the purchaser of real property sued to recover a down payment. The contract contained a provision that the sale was " subject to a mortgage of $16,000 to be at 5 per cent, three years to run." As a matter of fact the mortgage to which the sale was made subject contained a provision that the mortgage was payable in gold coin only and not in legal tender generally. It was claimed that the silence on the part of the vendor amounted to a fraudulent concealment of the character of the money in which the mortgage was to be paid. The Court of Appeals in that case said (at p. 558): " Special clauses in mortgages are not infrequent. They sometimes contain what is known as the insurance clause, or a clause making the whole mortgage due after a specified default, and other special terms are sometimes inserted. It would not, we conceive, be a valid ground of objection on the part of a purchaser of land *subject to a specific mortgage,* wherein the contract did not set out such special clauses, that they were not disclosed at the time the contract was made, if there was no deceit or misrepresentation." (Italics are mine.)

Had the plaintiff negotiated a new mortgage for $110,000 as she might under the terms of the contract there would have been

11

no question concerning the subordination of the third mortgage. The third mortgage would have been satisfied in full. Moreover, the third mortgagee might well have waived its right to have its mortgage satisfied and permitted it to be subordinated to a new first mortgage. I do not see how, with this provision of the contract that the plaintiff might obtain a new mortgage for $110,000, which provision, if its terms were followed, evidently might obtain a new mortgage for the parties, thereby discharging all three prior mortgages, it can be said that the defendant was guilty of any fraudulent concealment. There is no proof whatever of any effort to subordinate the third mortgage to a new first mortgage or that the holder of the third mortgage declined to do so. In the absence of any request that the third mortgagee subordinate his mortgage to the new mortgage, how can it be said, even though the plaintiff did not give a first mortgage for $110,000, that it was not possible to refinance the mortgages by obtaining such consent of the third mortgagee?

Moreover, the plaintiff could readily have procured an assignment of the first and second mortgages to a new lender and thus have evaded a breach of the terms of the third mortgage.

It seems to me that the recording of the third mortgage must be held to have fully notified the plaintiff of its provisions. The case of *Feltenstein* v. *Ernst* (49 Misc. 262; affd., 113 App. Div. 903) seems to be directly in point. In that case the plaintiff sued to recover a deposit paid upon a contract for purchase of real property, upon learning that a recorded mortgage upon the property contained a clause providing for the contingency of the imposition by the Legislature of a specific tax on mortgages. At Trial Term the plaintiff had judgment, but the Appellate Term reversed. Mr. Justice SCOTT, writing for the Appellate Term, said (at p. 264): " It is not to be denied that there is a possibility under this clause that, without any act or default on the part of the mortgagors, or the owner of the land, the interest on the mortgage may be increased beyond five per cent or the due date may be advanced. The plaintiff contends, and the court below held, that this possibility avoided the contract and entitled the plaintiff to recover back the deposit paid by her assignor. The significant facts are that the mortgage was an existing instrument at the time the contract was made and that, in so far as the contract undertook to describe it, the description was accurate; for the mortgage did bear five per cent interest and was to fall due on December 1, 1907. The general rule respecting the purchase of land subject to incumbrances is that, if the purchaser has notice of the existence of the incumbrance and its general nature, he is chargeable with knowledge of the

contents, terms and conditions thereof, and cannot avoid his purchase, no deceit or fraud having been exercised, because he did not acquaint himself with the particular terms of the incumbrance, and finds them to be different from what he supposed."

In the case at bar, as in the *Feltenstein* case, the only representation as to the terms of the mortgage was accurate, and it was correctly held in the *Feltenstein* case that if the purchaser has notice of the existence of the incumbrance and its general nature, he is chargeable with knowledge of the contents, terms and conditions thereof, and in the absence of deceit or fraud he cannot be excused because of his failure to acquaint himself with the particular terms of the incumbrance. In the case of *Kingsland* v. *Fuller* (157 N. Y. 507) the plaintiff sought to compel a purchaser at foreclosure sale to accept a deed of the premises. The purchaser claimed to have been misled by an error of the scrivener who prepared the notice of sale. The Court of Appeals said (at pp. 510, 511): " When mortgaged premises are described in the notice of sale, and are actually sold subject to an outstanding incumbrance, which is referred to in the notice and at the sale, the purchaser is chargeable with knowledge of the contents thereof. He is supposed in law to have read the instrument and to have made his bid and signed the conditions of sale with a view to its provisions, and he is also chargeable with knowledge of what was apparent and obvious upon the premises. * * * When a purchaser has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that which he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence fatal to his plea of ignorance."

Other cases might be mentioned where the courts have consistently held that in the absence of some fraud or concealment a party is bound to know the terms of a duly recorded instrument of which he has notice. I do not think there is merit in the position of the plaintiff herein. She came to New York with $30,000 to invest and found that the piece of property in question was for sale. She agreed upon the terms of sale and the purchase price at $167,500. The seller was willing to accept a down payment of $30,000 and a purchase-money mortgage for $27,500 to secure the balance over three existing mortgages upon the property. When she made the contract with defendant plaintiff agreed to the purchase price of $167,500. She then knew that there were then the three mortgages upon the property upon which there was unpaid $110,000. She knew that her cash investment was made subject to the liens of the three mortgages upon the property when

she took title and subject to a further mortgage of $27,500 to secure the balance of the purchase price she was willing to pay. She found no fault with the aggregate amount of the prior liens upon the property. She dogmatically objected to taking title to property burdened with *four* mortgages, and when, to meet this woman's whim, the defendant suggested the negotiation of a new mortgage to replace the first and second mortgages, thereby making the third mortgage subordinate only to the new first mortgage, her objections were overcome. It will thus be seen how whimsical and unsubstantial was the plaintiff's insistence that there should be three and not four mortgages upon the property. By the suggested change plaintiff was not to obtain any real advantage whatever and the prior incumbrances were not to be reduced a dollar. For some reason, after entering into a contract to purchase the property upon terms with which she could easily have complied, she sought to evade her contract and rescind its terms. I do not think she has furnished any ground upon which the court should decree a rescission, and that the ground upon which she seeks to be relieved from her contract is without any substance whatever.

I think the court at Special Term, upon the plaintiff's proof, properly dismissed her complaint, and that the judgment appealed from should be affirmed, with costs.

DOWLING, P. J., concurs.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event. Settle order on notice.