RUDOLPH WALLACH, Respondent, v. RIVERSIDE BANK, Appellant.

**Vendor and purchaser — real property — title — agreement to make good title implied in executory contract for the sale of land.**

1. It is not an error of law to refuse to find an immaterial fact even upon uncontradicted evidence.

2. An agreement to make a good title is always implied in executory contracts for the sale of land, and a purchaser is never bound to accept a defective title, unless he expressly stipulates to take such title, knowing its defects, and an agreement to accept a quitclaim deed as the means of transfer is not a waiver of a defect in the title. Hence, the vendee under an executory contract, in which he agrees to accept a quitclaim deed, is not obliged to accept a title with an outstanding dower right, and it is immaterial that he knew that fact when the contract was made. Whatever was said before the contract was signed was merged therein.

*Wallach* v. *Riverside Bank,* 134 App. Div. 962, affirmed.

(Argued October 18, 1912; decided November 19, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 10, 1909, affirming a judgment in favor

of plaintiff entered upon a decision of the court on trial at Special Term.

By a contract made on the fourth of February, 1905, the defendant agreed to sell to the plaintiff " all the premises known as Nos. 165 and 167 East 108th Street in the city of New York," bounded and described by definite and certain metes and bounds. The sale was stated to be subject to existing leases expiring on May 1st, 1905, and to " existing restrictions of record if any." The plaintiff, on his part, agreed to purchase said premises and to pay therefor the sum of $22,000, part in cash and the balance by a purchase-money mortgage. Upon receipt of the money and mortgage the defendant agreed to execute, acknowledge and deliver to the plaintiff a "quitclaim deed of said premises."

On the law day the defendant tendered to the plaintiff a quitclaim deed in the usual form of such instruments and demanded performance from him according to his covenant. The plaintiff declined to accept title and take the deed tendered because " the wife of William G. Wood did not join in the execution of the deed to George T. Leaird made by the said William G. Wood and recorded in Liber 23, section 16 of Conveyances, page 464." In the defendant's chain of title said deed is an essential part, yet the wife of the grantor did not join therein, although she was living when it was given and is living still with the marriage in full force. The plaintiff duly tendered performance on his part and offered to comply with the contract in all respects "provided a marketable title could be conveyed to him by the defendant." The defendant refused to perform other than as stated, and the plaintiff, after demanding the sum paid down and a further sum for the reasonable expense of examining the title, commenced this action to recover the same. The trial justice found the facts thus stated and also found " that prior to the execution by plaintiff of the agreement between him and defendant of date February 4th,

1905, plaintiff objected to the word ' quit-claim ' in the agreement and refused at first to sign the agreement because of the use of the word ' quit-claim.' " As conclusions of law he found that the title of the defendant was unmarketable and that the plaintiff was entitled to judgment for the amounts claimed. From the judgment of affirmance rendered by the Appellate Division this appeal is brought.

*George W. Carr* and *Daniel Seymour* for appellant. A vendee must take a doubtful or defective title, if he so stipulates, knowing the defects. (*Burwell* v. *Jackson,* 9 N. Y. 536; *Legett* v. *Mutual Life Ins. Co.,* 53 N. Y. 394; *Vought* v. *Williams,* 120 N. Y. 253.) Plaintiff, bound to know the law, knew that a quitclaim deed implied or indicated a doubtful, or possibly a doubtful, title. (*Kerr* v. *Freeman,* 33 Miss. 292; *Emmet* v. *Headlee,* 7 S. W. Rep. 22.)

*Harold Swain* for respondent. Under the contract between the parties, the plaintiff was entitled to demand a marketable title to the premises agreed to be conveyed, although he had agreed that the deed to be delivered should be a quitclaim deed. (*Burwell* v. *Jackson,* 9 N. Y. 535; *Moore* v. *Williams,* 115 N. Y. 586; *Jackson* v. *Fish,* 10 Johns. 456; *Jackson* v. *Root,* 18 Johns. 60; *Lynch* v. *Livingston,* 6 N. Y. 422; *Wilhelm* v. *Wilkin,* 75 Hun, 552.) There was no material error in the rulings of the Special Term as to evidence or as to the findings. (*Lese* v. *Lamprecht,* 196 N. Y. 32.)

VANN, J. The main question presented by this appeal is whether the defendant met its covenant to convey the premises by tendering a quitclaim deed thereof under the circumstances found by the trial court. The subject of the contract was a certain parcel of land, and the object of the plaintiff was to buy and of the defendant to sell

"all the premises," which were carefully described. The means prescribed by the parties to carry the contract into effect on the part of the defendant was a quitclaim deed. The defendant, however, did not have a perfect title free from incumbrances, for the premises were subject to an inchoate right of dower vested by statute in the wife of a prior grantor. As it could not convey that outstanding right it could not convey the premises, except by leaving them subject to that right. The covenant was to convey a certain parcel of land, not to convey all the right, title and interest of the defendant in that land. A contract to sell land implies ownership and power to give good title on the law day. The plaintiff did not agree to accept a defective title. He agreed to buy "all the premises" described by clear and unmistakable boundaries, and by implication of law this means in an executory contract a good title to the whole thereof, free and clear from incumbrances. Although the writing does not say so, the law says so, and the law is part of the writing. When a vendor agrees to sell a piece of land the law imputes to him a covenant that he will convey a marketable title unless the vendee stipulates to accept something less. While, owing to a statute, no covenant can be implied in a deed, in an executory contract to convey land the vendor always covenants by implication to give a good title, unless such a covenant is expressly made or is expressly excluded by the terms of the agreement. Even if the conveyance is to be made without warranties, still the land itself is to be conveyed, and as the grantor can convey only that which he has, unless he has title to the land he cannot convey the land. If his title is subject to a right which may take away part of the land, he cannot in the full legal sense convey the land, for there is an outstanding interest which his deed does not touch. If the plaintiff was bound to accept the deed tendered with a partial defect of title, he would have been bound to accept it even if it conveyed

nothing whatever, although the consideration named was $22,000.

These views are supported by the authorities, both ancient and modern. In the leading case in this state, decided in 1854, Judge SAMUEL L. SELDEN, upon a careful review of the previous cases and after an able discussion of the principles involved, with the concurrence of all his associates, held that in every executory contract for the sale of lands there is an implied warranty on the part of the vendor that he has a good title which continues until merged in the deed of conveyance. (*Burwell* v. *Jackson*, 9 N. Y. 535.) This case has been frequently cited but never questioned, and the opinion shows such perfection of learning and reasoning as to make it a landmark in the law. We cite a few other cases to show how the principle has been adopted and applied under varying circumstances. (*Delavan* v. *Duncan*, 49 N. Y. 485, 487; *Leggett* v. *Mutual Life Ins. Co. of N. Y.*, 53 N. Y. 394, 398; *Moore* v. *Williams*, 115 N. Y. 586, 592; *Vought* v. *Williams*, 120 N. Y. 253, 257; *Blanck* v. *Sadlier*, 153 N. Y. 551, 556.)

The agreement of the plaintiff to accept a quitclaim deed as the means of transfer was not a waiver of the defect. A quitclaim deed is as effective as any to convey all the title the grantor has, and a deed with all the covenants known cannot strengthen a defective title, but can simply protect from loss on account thereof. The sale was subject to existing liens and to existing restrictions of record, and it could be subject to no other defect unless it was also specified. As was said in *Moore* v. *Williams* (*supra*): "The express stipulation that he (the vendee) was to take the lot subject to an incumbrance specified shows that in the minds of the parties there was to be no other incumbrance upon the lot. But, aside from the language used in the contract it is familiar law that an agreement to make a good title is always implied in executory contracts for the sale of land, and that a pur-

chaser is never bound to accept a defective title, unless he expressly stipulates to take such title, knowing its defects. His right to an indisputable title, clear of defects and incumbrances does not depend upon the agreement of the parties, but is given by the law." (p. 592.) If the plaintiff knew of the defect when the contract was signed, he had the right to presume from its terms that a good title would be made before the law day. It is a somewhat common practice to agree to sell land without limitation, although both parties know at the time that some outstanding right must be acquired by the vendor in order to enable him to perform his covenant when the law day arrives.

The defendant insists that the court erred in refusing to find upon its request that the plaintiff knew what a quitclaim deed was and the title it would convey; that before the agreement was executed he had been told by the defendant that the only title it could give was such as it had and no more, and that he knew when he signed the contract that there were existing questions respecting the title.

Assuming, without holding, that there was sufficient uncontradicted evidence to warrant these findings, the written agreement could not be cut down or limited by such facts. Whatever was said before the instrument was signed being merged therein became wholly immaterial, and it is not an error of law to refuse to find an immaterial fact even upon uncontradicted evidence.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur.

Judgment affirmed.