GEORGE F. JOHNSON, Claimant, *v.* STATE OF NEW YORK.

(Claim No. 9643.)

(State of New York, Court of Claims, July, 1918.)

Auctioneers — duties of, in conducting sale of state lands at public auction — title — evidence — contracts — deeds.

Pursuant to a resolution of the commissioners of the land office, the state engineer and surveyor, by an auctioneer, conducted a sale at public auction of certain state lands, at which the auctioneer publicly read both the notice of sale subscribed by the state engineer and surveyor stating that pursuant to said resolution and by virtue of the power vested in him by law, he would " offer for sale \* \* \* all the title of the state of New York in the premises described " etc., and the terms of sale which provided that " The premises described in the annexed advertisement of sale " will be sold under the direction of the state engineer and surveyor upon the terms therein stated, and among the said terms it was provided " the purchaser thereof will receive a quit-claim patent conveying all the title of the State of New York in the premises purchased by him." At the time of the sale the purchaser had complete knowledge of the existence of certain outstanding unpaid taxes and assessments, his attorney who accompanied him having a complete statement thereof. At the closing of the title said taxes and assessments were still liens on the premises and the state engi-

State of New York, Court of Claims, July, 1918.    [Vol. 104.

neer and surveyor refused to make a conveyance of the premises free and clear from said taxes and assessments. The purchaser, having paid said taxes and assessments, presented a claim for the amount thereof, with interest, and at the hearing testified that the auctioneer in answer to several inquiries if the premises were being sold free and clear replied, "Yes, free and clear, and for cash." The auctioneer emphatically denied such testimony and testified that he publicly read the terms of sale and stated the property was being sold in accordance with the description and the terms of the sale as read, and nothing outside of that. *Held*, upon a dismissal of the claim, that claimant had failed to establish by a preponderance of evidence that the auctioneer stated that the premises were to be sold free and clear from any incumbrances, and this without a finding that any witness had testified with intentional inaccuracy.

Assuming that the auctioneer made the statement testified to by claimant, and that he was authorized to make them, they were merged in the written contract of sale, which could not be altered, varied or changed by parol evidence.

Claim for reimbursement of the amount paid for taxes and assessments upon state lands purchased at public sale.

Ferriss & Storck, for claimant.

George L. Meade, Deputy Attorney-General, for the State of New York.

Cunningham, J.  On June 25, 1905, and for some time prior to that date, the state of New York was seized of certain unappropriated state lands in the borough of The Bronx, city and county of New York. On that date, the commissioners of the land office adopted a resolution providing:

" The State Engineer and Surveyor is hereby authorized to sell the above described land at not less than the foregoing price,  *  *  *  .

" *Further Resolved,* That the State Engineer and Surveyor be and hereby is directed to·sell said lands at a sale to be held in the City of New York upon some

day in September, 1905, in parcels containing one or more lots; and he is authorized to receive a cash deposit of 10 per cent, at the time of the sale of each parcel or lot and to give a receipt therefor; the remainder of the purchase price to be paid within sixty days; the purchaser to receive a quit-claim patent upon the production of the Treasurer's receipt in full of payment and the certificate of sale of the State Engineer and Surveyor of said lands."

Pursuant to this resolution, the state engineer and surveyor, by James L. Wells, Esq., an auctioneer, now state treasurer, conducted the sale at public auction at the New York Real Estate Salesroom, in the city of New York. Mr. Wells publicly read the notice of sale, and the terms of the sale. The claimant was the highest bidder at the sale. His bid was $4,675, and he paid down $467.50. The claimant and the state engineer and surveyor executed the contract attached to the terms of the sale. By the provisions of the contract, the terms of sale were made part of it. The notice of sale subscribed by the state engineer and surveyor stated that, pursuant to the aforesaid resolutions, and by virtue of the power vested in him by law, he would " offer for sale  *  *  *  all the title of the State of New York in the premises described," etc. The terms of sale provided that " the premises described in the annexed advertisement of sale," would be sold under the direction of the state engineer and surveyor, upon the terms therein stated, and among the terms it was provided, " the purchaser thereof will receive a quit-claim patent conveying all the title of the State of New York in the premises purchased by him." On September 26, 1905, at the time of the sale, the premises were subject to taxes for the year 1900, and various assessments for local improvements, for the years 1901 to 1903. Title was closed by the claimant with

the state engineer and surveyor on November 27, 1905, at which time these taxes and assessments were still liens on the premises. The claimant notified the state engineer and surveyor of these liens at that time, and demanded that that officer convey the premises to him free and clear from them, which the latter refused to do. Thereupon, the claimant paid the balance of the purchase price, in the sum of $4,207.50, under protest, and received from the state a quit-claim patent to the parcel of land which we have mentioned. Subsequently, and on February 27, 1909, the claimant paid the said taxes and assessments, which then aggregated, with interest, the sum of $2,398. This claim was filed to recover the amount so paid with interest. The claimant had complete knowledge of the existence of these outstanding unpaid taxes and assessments at the time of the sale.

The claimant, his attorneys and one other witness testified in substance that at the sale several inquiries were made of Mr. Wells if the premises were being sold free and clear, and that he replied, " Yes, free and clear, and for cash." This was denied emphatically by Mr. Wells, who testified that he read publicly the terms of sale and stated that the property was being sold in accordance with the description, and the terms of the sale as read, and nothing outside of that. Albert M. Jeroe, the clerk of Mr. Wells, who was also clerk at the sale, testified, with equal positiveness, to the same effect. Merritt Peckham, Jr., land clerk in the state engineer's office, who was present, did not testify positively that Mr. Wells did not make the statement alleged by the claimant, but that his best recollection was that he did not. We conclude that the claimant has failed to establish by a preponderance of the evidence that Mr. Wells stated that the premises were to be sold free and clear of liens or incumbrances. In reaching

Misc.]   State of New York, Court of Claims, July, 1918.

this conclusion, it is unnecessary to find that any wit-
ness has testified with intentional inaccuracy.   The
sale took place in 1905.   The lapse of time inevitably
must have affected the recollection of the witnesses,
particularly as their interests were involved.   Further-
more, at the time of the sale, other auctions, with all
the confusion and distraction incident to them, were
being held in the same room, and within a few feet of
the rostrum of Mr. Wells.   These easily may have led
to a misunderstanding of alleged statements made in
connection with this sale.   Two circumstances are most
important in this connection.   In the *first* place, Mr.
Wells, at the time of the trial, had been for twenty-
seven years president of the Auctioneers' Association
of the City of New York, and an auctioneer of wide and
varied experience in conducting both judicial and
voluntary sales.   It is almost inconceivable that he
could unwittingly have interposed representations or
conditions of his own; and, if he did not do it through
ignorance or inadvertence, what motive or purpose
could he possibly have?   *Secondly,* the claimant was
accompanied by his attorney, who had with him a com-
plete statement of the unpaid taxes and assessments.
This attorney signed the sale contract.   His specialty
is real estate law, in which he had had many years
experience.   If the alleged representations were made
by Mr. Wells, why were they not incorporated, at the
instance of the claimant, or his attorney, in the sale
contract, which contains no reference to them?   What
possible reason could there be for the omission on the
part of the claimant to insist on the inclusion of such
covenants in the contract?   If the auctioneer had legal
authority to add to the conditions of the sale, as
alleged, he had authority to include those added agree-
ments and conditions in the contract of sale.

It is extremely doubtful that the auctioneer had any

legal authority to make oral representations outside of the notice of sale and terms of. sale. No statutory authority is conferred upon him. The statute provides that the terms of sale shall be fixed by the commissioners of the land office and by the state engineer, which was done by means of the notice and terms read. It seems to us that he had no authority to add oral conditions.

But quite aside from the foregoing considerations, and assuming that the alleged statements were made by the auctioneer, and that there was authority in him to make them, they were merged in the written contract of sale, and parol evidence is inadmissible to vary, alter or change the written contract. Our courts have laid down this rule: '' Where parties have entered into a contract or agreement which has been reduced to a writing, it is a general rule that in the absence of *fraud* or *mistake* if the writing is complete on its face and unambiguous, parol evidence is not admissible to *contradict,* vary, alter, add to or detract from the terms of the instrument.'' Ency. Ev. 322; *Uihlein* v. *Matthews,* 172 N. Y. 154, and cases cited.

The claimant is obliged to admit this well-established limitation, but argues that the sale contract is ambiguous, because the provision in it, and in the notice of sale and terms of sale, which form part of it, providing for the sale of '' all the title of the State of New York,'' is inconsistent with, and in derogation of, the statute regulating the sale, and the resolution of the commissioners of the land office to which reference has been made. We will discuss later that alleged inconsistency and contradiction, but at this point it is sufficient to point out that, assuming it to exist, it does not constitute an ambiguity permitting parol evidence in explanation. As is held in a case cited by the claimant, ''An ambiguity, in order to authorize parol

evidence, must relate to a subject treated of in the paper and must arise out of words used in treating that subject.'' *Trustees of Southampton* v. *Jessup,* 173 N. Y. 84, 89, 90. There is nothing ambiguous about the phrase '' all the title of the State of New York.'' The claimant, in his brief, himself contends that it has a very exact and definite meaning. Parol evidence, to alter or change it, is of no avail.

But the claimant contends further, with much force and some plausibility, that there was an implied condition and covenant in the terms and agreement of sale, that the premises were to be conveyed to the claimant free and clear of incumbrances. Two cases are called to our attention in substantiation of this contention. All italics below are ours.

*Burwell* v. *Jackson,* 9 N. Y. 535, decided in 1854, has been said to show '' such perfection of learning and reasoning as to make it a landmark in the law.''· In that case, the vendors agreed that they would '' execute or cause to be made and executed unto the said party of the second part   \*   \*   \*   a good and sufficient deed of conveyance *of a certain lot of land,''* etc. The title of the vendors was extinguished before the time for conveyance, by sale under mortgage, which latter was on the record at the time of the making of the contract. The court held '' that a purchaser is never bound to accept a defective title, unless he expressly stipulates to take such title knowing its defects,'' and '' there is in every executory contract for the sale of lands, whatever may be the language in which the agreement is couched, an implied undertaking to make a good title, unless such an obligation is expressly excluded by the terms of the agreement.'' It was held, also, that this implied warranty ceases upon the consummation of the contract of sale by the execution of the deed, because· then the law throws upon the purchaser the responsi-

bility of caring for his own protection by suitable express covenants in the deed.

In *Wallach* v. *Riverside Bank,* 206 N. Y. 434, the defendant agreed to convey to the claimant " *all the premises known as* Nos. 165 and 167 East 108th street in the city of New York," and upon payment, etc., " to deliver to the plaintiff a quit-claim deed *of said premises.*" On the day for closing title, defendant tendered plaintiff a quit-claim deed, describing the premises, and demanded a performance from the plaintiff. The plaintiff refused, because the wife of an essential grantor in the defendant's chain of title did not join in the deed. The plaintiff sued to recover the sum paid down and certain expenses incurred by him. The court sustained a recovery by the plaintiff, and held " *The covenant was to convey a certain parcel of land, not to convey all the right, title and interest of the defendant in that land.* A contract to sell land implies ownership and power to give good title on the law day. The plaintiff did not agree to accept a defective title. He agreed to buy, *all the premises,* described by clear and unmistakable boundaries, and by implication of law this means in an executory contract a good title to the whole thereof, free and clear from incumbrances. \* \* \* When a vendor agrees to sell a piece of land the law imputes to him a covenant that he will convey a marketable title unless the vendee stipulates to accept something else. \* \* \* Even if the conveyance is to be made without warranties, still the land itself is to be conveyed, and as the grantor can convey only that which he has, unless he has title to the land he cannot convey the land." The court held further, that the agreement to accept a quit-claim deed as a means of transfer was not a waiver of the defect, as a quit-claim deed is as effective as any to convey all the title the grantor has.

Misc.]    State of New York, Court of Claims, July, 1918.

On these two decisions, the claimant has built an elaborate and ingenious argument to sustain the theory that the sale of "all the title of the State of New York," should be construed to mean "all the title of the state of New York in the premises, *free and clear from all liens and incumbrances.*" Briefly, his position is that a sale of "all the title" of the vendor is a covenant of dual obligation, to wit, to convey.

(a) All the title of the vendor;

(b) The premises themselves, subject only to defects in the *title.* And, it is argued, liens and incumbrances, such as these taxes and assessments are, do not affect the *title,* but go to diminish the value of the land.

We recognize the soundness, as well as the authority, of the two cases which have been cited by the claimant. Had the state agreed to convey "all the premises" described, as in the case of *Wallach* v. *Riverside Bank,* or to give "a good and sufficient deed of conveyance of a certain lot of land," describing it, as in the case of *Burwell* v. *Jackson,* we would have no difficulty in rendering an award to the claimant. As was said in the former case, "The land itself is to be conveyed, and as the grantor can convey only that which he has, unless he has title to the land he cannot convey the land. If his title is subject to a right which may take away part of the land, he cannot in the full legal sense, convey the land, for there is an outstanding interest which his deed does not touch." A contract to convey "all the premises," or "all the land," implies the covenant to convey in such manner that all the attributes necessary to complete ownership, perfect, free, clear and unincumbered, of the thing conveyed, shall follow, and embraces the broadest obligation. But the state contracted to do something different from the foregoing. It did not agree to convey the "premises" or the "land" at all. It covenanted to convey to the

14

claimant merely " all the title " it held in the tract described. It has fulfilled that obligation completely. It has conveyed to the claimant " all the title of the State of New York " in those premises. In this instance, the agreement of the state was not the broad, all-embracing obligation of the precedents cited, but was the extremely narrow and restricted obligation indicated by the language of the contract. There is no authority for the claimant's contention that the state's agreement obligated it in the dual manner we have mentioned. His analysis, unsupported by authority, seems merely arbitrary.

The claimant concedes that, had the language of the contract been " all the right, title and interest of the State of New York," there could be no recovery here. He contends that this phrase is much narrower and more restricted than the phrase " all the title," alone, and that a covenant to convey in the latter phraseology imposes a wider and larger obligation upon the vendor than the former, and implies a covenant of freedom from incumbrances. In other words, his argument amounts to this: That a grant of " all the title " of a vendor conveys more than one in the words " all the right, title *and interest* " of the vendor. Exactly the contrary is true. The former conveys but the *title* of the vendor only. The latter conveys all his *title,* and *also* all his *right and interest* in the land, whatever they may be. They may be entirely different in nature from title to the land. If it be conceded that a covenant to convey all the right, title and interest of the vendor in certain premises does not imply a covenant that the same shall be free from liens and incumbrances, surely a covenant to convey merely all the title of the vendor in the premises will not do so.

In view of the foregoing conclusions at which we have arrived, it is unnecessary to discuss whether the

alleged implied covenant of freedom from liens, etc., survived delivery of the deed. There is, too, some contention that the state engineer had no authority to incorporate the words " all the title " in the notice and terms of sale, and that the statute and the resolution of the commissioners required the sale of the premises without such limitation. We do not agree with that view of the law or the functions of the state engineer. In any event, it would avail claimant nothing here. If the state engineer violated his statutory duty, or if the sale was illegally conducted, certain remedies may perhaps have been open to the claimant, or to a taxpayer, but surely the claimant cannot complete the sale which he contends was illegally and improperly conducted, because it purported to convey merely " all the title " of the state, retain the property, and demand the right to the thing he alleges should have been advertised, sold and contracted to be conveyed, but which was, in fact, neither advertised, sold nor contracted to be conveyed.

All the objections made at the trial to the admission of testimony, rulings on which were reserved, are overruled, and the motion made by the state, at the conclusion of the trial, for the dismissal of the claim, is hereby granted; with exceptions to the party adversely affected respectively, as to each.

For the reasons we have set forth, the claim is dismissed.

Although the court is constrained to differ from the conclusion urged by the claimant's counsel, we feel bound to acknowledge the sedulous care and marked erudition which characterize the briefs submitted by them. They are such as only lawyers of marked scholarship in the law of real estate could formulate.

Ackerson, P. J., concurs.

Claim dismissed.