THEODORE L. HOLMES et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29801.)

Court of Claims, August 30, 1951.

*Lewis B. Parmerton* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Douglas S. Rider* of counsel), for defendant.

LAMBIASE, J. Pursuant to order of the Public Service Commission and to provisions of chapter 678 of the Laws of 1928 and acts amendatory thereof and supplemental thereto, the State of New York duly appropriated on June 25, 1947, a perpetual easement for the purpose of constructing, reconstructing and maintaining thereon slopes, in and to a certain piece or parcel of land belonging to claimants, as laid out on Map No. 13 and described as Parcel No. 23, situate in the village of Owego, County of Tioga, State of New York, for the elimination of grade crossings on Owego–Candor Part 1 S. H. No. 5420 (North

Avenue) Paige Street, McMaster Street, East Temple Street and Greene Street, Public Service Case Nos. 7688 and 8145.

The appropriation for perpetual easement is 0.004 of an acre out of the rear of claimants' property and consists of a triangular strip of land fifty feet on its north line along the south side of West Avenue, a public street in the village of Owego, New York, forty-eight feet more or less on its south line, seven feet wide on its west line and diminishing to zero at its east end. The elevation of claimants' property at the point of appropriation is about eight and one-half feet below the elevation of West Avenue. Claimants' property out of which the appropriated parcel was taken is triangular in shape, lies east of North Avenue, its westerly line being eighty-four feet east of the east boundary of North Avenue as it existed prior to the grade crossing elimination, is bordered on the north by West Avenue and on the south by Erie Street Extension, so called.

It is alleged in the claim as amended that "The premises appropriated are a part of the premises owned in fee by the claimants on which premises is located a building used by the claimants in the conduct of their business and which premises on the south are adjacent to a street which has been used by the claimants, their customers, the claimants' predecessors in title, their customers and by the public in general for public purposes for upwards of fifty years and to which street access to and from North Avenue, in the Village of Owego, N. Y., will be closed by reason of the Grade Crossing Elimination of Erie Railroad, Public Service Case Nos. 7688 and 8145, which has been ordered by the Public Service Commission, and the grade of said street will be changed and altered, and there will be no suitable means of access to and from said premises by reason of the changes made pursuant to the said Grade Crossing Elimination, and the building on said premises has been so constructed for many years that receipts and deliveries of all merchandise by the claimants and their predecessors in title in the operation of their business were made from the southerly side of said premises, and by reason of the changes made pursuant to the said Grade Crossing Elimination the receipt and delivery of merchandise by the claimants will be seriously impaired; that access to and from claimants' premises during the process of the elimination of said Grade Crossing will be seriously impaired and will be seriously impaired in the future upon completion of said Grade Crossing Elimination." (Claim, Paragraph 6.)

"That claimants own premises westerly of North Avenue, in the Village of Owego, N. Y., which premises are and have been

used by the claimants conjunctively in connection with the premises from which land has been appropriated daily in the conduct of their business, and the use of such premises westerly of North Avenue, has been seriously impaired by reason of the Grade Crossing Elimination.'' (Claim, Paragraph 7.)

It is contended by claimants that Erie Street Extension so-called, was at the time of the appropriation a public street in the village of Owego, New York. The State maintains that it was not. The issue thus presented is whether Erie Street Extension was a public street and the question is whether the *locus in quo* had been dedicated by the owner to the use of the public and whether the same had been accepted for such purpose at the time of the appropriation.

The question then primarily arises as to what was done by the owner of the *locus in quo* to dedicate and to devote the same to the public use as a highway. The evidence of such intent may rest in writing or in oral declarations or in the acts of the parties concerned. (*Flack* v. *Village of Green Island,* 122 N. Y. 107.) '' In the case of a highway, the public must accept the highway, and before such acceptance the dedication may be revoked. Such acceptance may be proved by long public use, or by the positive acts of the public authorities in recognizing and adopting the highway.'' (*Cook* v. *Harris,* 61 N. Y. 448, 454.) The land comprising the *locus in quo* was conveyed with other real property to New York and Erie Rail Road Company (*sic*) by deed from John R. Drake and wife dated March 20, 1849, acknowledged April 5, 1849, and duly recorded April 5, 1849, '' To have and to hold the above granted and described premises, with the appurtenances unto the said party of the second part, their successors and assigns forever only However, for purposes connected with the legitimate business of said New York & Erie Rail Road Company.'' (Exhibit 6.) The question suggests itself as to what is the legal effect of the words '' only However, for purposes connected with the legitimate business of said New York & Erie Rail Road Company.'' We are of the opinion that the Drake deed conveyed the fee of the land to the railroad and that the immediately foregoing quoted words operate at most as a condition subsequent. '' When a conveyance in fee is made upon a condition subsequent, the fee remains in the grantee until breach of condition and a re-entry by the grantor.'' (*Vail* v. *Long Is. R. R. Co.,* 106 N. Y. 283, 287; *Nicoll* v. *New York & Erie R. R. Co.,* 12 N. Y. 121; *Buffalo Pipe Line Co.* v. *New York, Lake Erie & Western R. R. Co.,* 10 Abb. N. C. 107.)

On December 9, 1862, '' The Erie Railway Company '' (*sic*) '' released '' to the trustees of the Village of Owego '' that certain piece of land thirty (30) feet in width lying on the north side of said Depot Grounds and east of and adjoining North Avenue Street (sic) and running easterly to the lands reserved in the Deed of John R. Drake to the New York and Erie Railroad Company dated March 20, 1849 for said Highway or Street.'' (Exhibit 10.) See, also, Exhibit 8. The land thus '' released '' is the *locus in quo* designated as Erie Street Extension. On December 15, 1862, the Village of Owego accepted the '' release '' of said lands (Exhibit 9), and on the same day the trustees of said village '' acting as Commissioners of Highways,'' '' ordered and determined that so much of West Avenue as is hereinafter described be and the same is hereby discontinued and taken up viz. Beginning on the northerly bounds of the lands of the Erie Railway Company and running from thence easterly to the southerly bounds of the lands of said Company.'' (Exhibit 11), the discontinuance and the taking up of which street being the recited consideration for the aforesaid railroad's release to the Village of Owego, New York. (Exhibits 8, 10.)

We construe the railroad's '' release '' as having the legal effect of a quitclaim deed which is as effective as any deed to convey all the title the grantor therein had. (*Wallach* v. *Riverside Bank,* 206 N. Y. 434.) Furthermore, the lack of acknowledgement on said '' release '' did not invalidate it at common law or under statute as between the railroad company and the Village of Owego, New York (*Strough* v. *Wilder,* 119 N. Y. 530.) Whether or not the '' release '' on the part of the railroad company constitutes a breach of the afore-mentioned condition subsequent contained in the Drake deed, we do not deem it necessary to determine, for it does not appear from the record that a re-entry by those entitled to re-enter had ever been made since 1862 when the breach of said condition occurred, if a breach thereof, indeed, did occur. We are of the opinion, therefore, that we may safely assume that the '' release '' given by the railroad company to the Village of Owego is effective for the purpose for which it was given. In the light of the foregoing discussion we conclude that at the time of the appropriation, Erie Street Extension had been dedicated to use as a public street, had been accepted for such purpose by formal act of acceptance of the public authorities of the Village of Owego, New York, and that at the time of the appropriation it was a public street. (*Flack* v. *Village of Green Island,* 122 N. Y. 107,

113, *supra*; *Cook* v. *Harris,* 61 N. Y. 448, *supra*; *Niagara Falls Suspension Bridge Co.* v. *Bachman,* 66 N. Y. 261; *Holdane* v. *Trustees of Vill. of Cold Spring,* 21 N. Y. 474; *People* v. *Brooklyn & Queens Transit Corp.,* 273 N. Y. 394; *Speir* v. *Town of New Utrecht,* 121 N. Y. 420; *Requa* v. *City of Rochester,* 45 N. Y. 129; *Matter of Starr St.,* 73 Misc. 380; *McVee* v. *City of Watertown,* 92 Hun 306; *Matter of Bragaw St.,* 141 N. Y. S. 987; see, also, 149 N. Y. S. 369; *Schmidt* v. *Spaeth,* 86 N. J. L. 179; *Morse* v. *Borough of Essex Fells,* 121 N. J. Eq. 202; *Marwell Constr. Co.* v. *Mayor & Bd. of Aldermen of City of Providence,* 61 R. I. 314.)

We do not overlook the fact and we expressly make a point of it that what we have said herein with reference to the legal effect of the words " only However, for purposes connected with the legitimate business of said New York & Erie Rail Road Company," contained in the Drake deed does not bind anyone other than the parties to this claim who are before us; but it was necessary, in our opinion, to discuss and to dispose of that question in the orderly consideration of the issues before us as between the parties hereto.

Concededly, Erie Street Extension has been closed by the grade crossing elimination at its westerly end where it made a T intersection with North Avenue before the elimination of the grade crossing. Since the elimination, therefore, it may not be entered or left from North Avenue. This did not, however, cut off claimants' property from all other and suitable means of ingress and egress. (S. M. 56, 127.) A municipality may discontinue a street when it is done in the manner prescribed by law and when there is left to the private citizen other and suitable means of access (*Egerer* v. *New York Central & H. R. R. R. Co.,* 130 N. Y. 108) even though such access may not be quite as convenient as it would have been if the street had been allowed to remain open. (*Miller* v. *State of New York,* 229 App. Div. 423; *Reis* v. *City of New York,* 188 N. Y. 58.) Within the authorities, the damage, if any, for the closing of Erie Street is *damnum absque injuria.* (*Miller* v. *State of New York, supra*; *Dwornik* v. *State of New York,* 251 App. Div. 675, affd. 283 N. Y. 597; *Coffey* v. *State of New York,* 291 N. Y. 494; *Jablowsky* v. *State of New York,* 267 App. Div. 54, affd. 292 N. Y. 652.)

It is urged by the claimants that a change of grade in Erie Street Extension has resulted at the southwesterly corner of said street where it adjoins North Avenue by reason of the construction of a stairway at said point leading from the level of

North Avenue to the level of Erie Street Extension for which alleged change of grade they should be compensated under section 159 of the Village Law. We discuss this item of claimants' claim no further than to say that it is actually part and parcel of the item of damage alleged for the closing of Erie Street Extension which latter item we have already discussed, the disposition made thereof, in our opinion, being determinative of this alleged claim for change of grade; and that under the facts established herein, section 159 of the Village Law is not applicable.

We turn now to the matter of the concrete storage plant which claimants maintained at all times in the claim mentioned for the storage of inflammable materials which plant was located on Delphine Street in the village of Owego, New York, and was used in conjunction with the business carried on at claimants' feed mill on Erie Street Extension. That Delphine Street was at all times in the claim mentioned a public street has not been put in issue and for the purposes of our discussion here we have assumed that it is a public street. Concededly, Delphine Street was also closed as a result of the elimination of the grade crossing. Upon this record, we are unable to make any finding as to the ownership of said storage plant. Furthermore, claimants' real estate experts in testifying made no mention of said storage plant and allocated no damages in their testimony of damages as resulting to it by reason of the closing of Delphine Street.

The closing of Delphine Street at its intersection with North Avenue did not cut off all other and suitable means of ingress and egress to said storage plant (S. M. 61) although access thereto from claimants' feed mill may not be quite as convenient as it was before such closing. However, the question presented is the same as that presented by the closing of Erie Street Extension and for the same reasons expressed in connection with the closing of the latter, we are of the opinion that any damage resulting therefrom is also *damnum absque injuria* and is not recoverable.

There is not too much difficulty in fixing the amount of damages for the taking of the perpetual easement in the 0.004 acres of claimants' land, but the question of consequential damages, for which claimants ask payment, presents a more difficult problem. Consequential damages consist generally of the diminution in value of the remainder of the owner's property as the result of the severance of the part taken and of the use to which the part thus taken is put by the condemnor. (*South Buffalo Ry. Co.* v. *Kirkover*, 176 N. Y. 301.) To determine the

question, we must ascertain whether any such damage has indeed resulted to the remainder of claimants' property. If it has, it must now be awarded as consequential damages.

We believe that the holding in *Van Aken* v. *State of New York* (261 N. Y. 360) prescribes the answer and that in the light of said case it must be held and we do hold, that the appropriation of the perpetual easement in and to the 0.004 acres of claimants' land described in the notice of appropriation did not in any way result in any consequential damages to claimants, as consequential damages have been defined by law in condemnation cases.

Claimants have sustained no recoverable damages by reason of the matters discussed herein except as herein stated, and in our accompanying decision we have awarded to claimants such damages.