■    SAMUEL CASTELLANO, Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 49432.) — Cross appeals from a judgment in favor of claimant, entered May 20, 1970 upon a decision of the Court of Claims. Claimant has abandoned his cross appeal, leaving only the State's appeal for our consideration. One of two major issues in dispute upon this appeal concerns the value assigned by the trial court to the lands of claimant located adjacent to and on either side of Route 9W and Roberts Road. The State challenges that valuation, advancing the argument that the court's determination lacks supportive evidentiary justification and urges rejection thereof by this court and adoption of the valuation offered by the State's appraiser. With respect to that portion of claimant's land lying to the west of Route 9W, the expert witnesses for both parties agreed generally as did the court, on the parcel's commercial use, but they differed markedly on the property's value, with claimant's appraiser positing a $100 per foot frontage value and the State's expert assigning same a value of $8,000 per acre. The trial court, rejecting the front footage valuation method, determined the parcel's value to be $10,000 per acre. Appraisal of that portion of claimant's land lying to the east of the highway generated disagreement among the expert witnesses not only as to its value but also as to its highest and best use. Judging the parcel to be best suited for commercial use, claimant's appraisal witness assigned it a value of $150 per front foot, while the State's appraiser fixed its value at $650 per acre based upon an agricultural use. Upon a finding that this area's highest and best use was likewise for low intensity commercial development as zoned, the court assessed the parcel's value at $7,000 per acre, as adjusted for the property's below highway grade level. In evaluating both segments of claimant's lands, the court based its findings upon three specific comparable sales submitted and relied upon by the State's appraiser, one of which was also common to the appraisal testimony presented on claimant's behalf. To each of these sales, the court made appropriate adjustments set forth in its decision reflecting certain factors which distinguished the comparable sales from the subject property. Each of the individual adjustments considered by the court, whether for fill, grading, location or proximity to utilities, was included within the State's appraisal evidence relating to those sales although the court differed, as was its prerogative, as to the relative weight and value assigned to each factor and the applicability thereof to the subject property in arriving at its value. The adjustments made by the court, the assessment thereof and the conclusions reached are all adequately explained and amply supported by the evidence. With respect to the court's valuation of the easterly acreage, the court concluded that this segment enjoyed the identical highest and best use attributed to its westerly counterpart, a conclusion which is supported by the evidence. Consequently, it was correct in rejecting generally the appraisal data and valuations based upon differing highest and best uses as proffered by the various witnesses, and in adopting and applying the market data and valuation submitted for the westerly parcel appropriately modified to reflect the topographical disabilities affecting this east-side land. Justifi-

cation for this approach can be found in the immediate proximity of the easterly segment to the western portion which was located only a few feet away across the highway, in the testimony concerning the commercial capabilities of the general area, and in the availability of appraisal and market data for that neighboring parcel which was readily adaptable to this easterly segment. Also challenged by the State is that portion of the award which represents consequential damages to the claimant's cold storage and fruit packing building, which stands on a portion of the east-side parcel fronting on Roberts Road. Roberts Road was widened and dead-ended at the northern end of the building, leaving a "turnaround" which is claimed to be inadequate for the large tractor-trailers which formerly served the building. As a result of the widening, only one point of entry and exit remains where there were formerly three, and the pitch of the southern driveway leading to the loading dock was increased, requiring the placing of fill. It is alleged that the remaining access is unsuitable for two reasons: firstly, large trucks no longer have any place to turn around, requiring them to back in or back out for a distance of approximately two-tenths of a mile, and, secondly, a four foot " dip ", resulting from the placing of the fill necessitated by the change in pitch, causes trucks to get " hung up " on their dolly wheels when they do back in. As a result of these conditions, one of claimant's truckers no longer serves him and the other two send smaller trucks or have to be loaded on the highway with the assistance of claimant's forklift. Merely circuitous access is not compensable; it must be unsuitable, and mere inconvenience is insufficient to constitute unsuitability (*Priestly* v. *State of New York*, 23 N Y 2d 152). In the leading case of *Red Apple Rest.* v. *State of New York* (27 A D 2d 417, 419), we distinguished prior cases finding access unsuitable because the access provided in those cases " all but prohibited ingress and egress into the premises of large trucks necessary in the conduct of the business conducted on the premises ". Not only does this case lack that element of physical impossibility relied on in *Red Apple Rest.* (*supra*), but the use of smaller trucks indicates that tractor-trailers aren't " necessary " to claimants' business. The evidence indicates that the discontinuing trucker ceased doing business because he didn't want to put up with the inconvenience, not because of impossibility. The use of smaller trucks has not been shown in any way as detrimental to the commercial value of the property, and the use of a forklift as an alternative is hardly as drastic a change in procedure as was involved in *Holmes* v. *State of New York* (279 App. Div. 489, *remanded* 201 Misc. 640, affd. 282 App. Div. 279). No serious permanent damage to claimants' business has been demonstrated (*Sukrennik* v. *State of New York*, 26 A D 2d 769). The facts here are very similar to *Penningroth* v. *State of New York* (35 A D 2d 1024), where we held that the "substantial maneuvering " necessitated by the closing off of one end of a semicircular driveway established inconvenience but not unsuitability. The paramount problem is the " hang-up " situation, which appears to be the major obstacle to the entry of large trucks. The State is correct in placing the responsibility for this problem on the manner in which claimant put in the fill. The court below admitted as much in stating that the area could " be raised a bit more to prevent hang-ups on their dolly wheels ", noting that the area was of sufficient width for this purpose. Yet the court stated that even if this were to be done, there would still be an adverse effect on the building because of the improvements. This statement is unclear and inconsistent, but in any event we can find nothing in the record to support such a conclusion. Claimant has shown nothing more than inconvenience. Judgment modified, on the law and the facts, by eliminating the award of $5,000 for consequential damages, and, as so modified, affirmed, without costs. Reynolds, J. P., Sweeney and Simons, JJ., concur; Aulisi and Staley,

Jr., JJ., dissent, and vote to affirm, in the following memorandum: I find it necessary to dissent for the reason that the majority has overlooked the damage which the appropriations have done to claimant's cold storage and fruit packing building. Not only was the edge of Roberts Road as reconstructed brought within four to five feet of the building, but this relocation also created a loss of parking for claimant's customers, and also created a backing-in, backing-out problem for the tractor-trailer combinations which regularly serviced that facility along the building's southerly side. Additionally, the closing of Roberts Road just northerly of claimant's property and the creation of a limited "cul-de-sac" rotary turnaround area caused difficulties for those same tractor-trailers in approaching and leaving the building and surrounding area. In sum, the appropriations and subsequent improvements eliminated several positive and material advantages which that facility had previously enjoyed and created a number of serious problems detrimentally affecting the building and thus supporting the trial court's award of $5,000 for consequential damages which, in my opinion, was fair and proper under the circumstances and should be affirmed.